UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

      -v.-                              :

TARIK IBN OSMAN SHAH,               :        S4 05 Cr. 673 (LAP)
    a/k/a "Tarik Shah,"
    a/k/a "Tarik Jenkins,"          :
    a/k/a "Abu Musab,"
                                    :
              Defendant.
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## SENTENCING MEMORANDUM


                                    MICHAEL J. GARCIA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for the United States
                                          of America


JENNIFER G. RODGERS
KARL METZNER
Assistant United States Attorneys,
    Of Counsel.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

     -v.-                              :

TARIK IBN OSMAN SHAH,                :        S4 05 Cr. 673 (LAP)
    a/k/a "Tarik Shah,"
    a/k/a "Tarik Jenkins,"           :
    a/k/a "Abu Musab,"
                                     :
       Defendant.
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM**

Defendant Tarik Shah is scheduled to be sentenced on Wednesday, November 7, 2007, at 10:30 a.m. The Government respectfully submits this Sentencing Memorandum to set forth its view of the appropriate sentence to be imposed on Shah. As determined by the Probation Office in its Presentence Investigation Report ("PSR"), Shah's sentencing range under the United States Sentencing Guidelines is 180 months, following his guilty plea to Count One of Indictment S4 05 Cr. 673 (LAP) (the "Indictment").[1]

---

[1] Count One of the Indictment charged Shah with participating in a conspiracy to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B. The parties agreed in a plea agreement dated April 2, 2007 that the final offense level was 35 and the applicable criminal history category was VI. The parties also stipulated that, because this would lead to a United States Sentencing Guidelines ("U.S.S.G.") range of 292 to 365 months' imprisonment, above the statutory maximum penalties applicable to the count of conviction (which was 180 months), the stipulated

(continued...)

Shah's admitted conspiracy involved Shah's offering to travel overseas to train *Al Qaeda* fighters in deadly martial arts techniques, which would then be used to carry out *Al Qaeda*'s deadly mission to attack the United States and its allies. For his crime, Shah should receive a sentence of 180 months' imprisonment, which is the maximum permitted by his count of conviction. Even that sentence is dramatically below that called for under the United States Sentencing Guidelines ("U.S.S.G.") range that would otherwise apply. Accordingly, Shah should receive neither a downward departure nor a variance from the Sentencing Guidelines under Section 3553(a), and should receive a sentence of 180 months.

## BACKGROUND

**A.      Shah's Offense Conduct**

Tarik Shah, a jazz musician and highly accomplished martial artist and martial arts instructor, first came to the attention of law enforcement in 2001 when he was introduced by Abdulrahman Farhane to a confidential source whom Farhane was trying to help send

---

[1](...continued)
sentence in this case was 180 months.
    The Probation Office calculated that Shah's final offense level was 37, based on an additional two-level enhancement pursuant to U.S.S.G. § 2M5.3(b)(1)(E), because the offense involved the provision of material support or resources with the intent, knowledge, or reason to believe that they would be used to commit or assist in the commission of a violent act, namely Shah's provision of himself as a martial arts expert to train *Al Qaeda* fighters. (PSR ¶ 59). This would result in a Guidelines range of 360 months to life imprisonment. Because the Guidelines sentence is limited to 180 months, however, the change in final offense level did not affect the Probation Office's recommended sentence.

2

money to purchase weapons and equipment for overseas jihadists. Later, in 2003, the FBI arranged for a different confidential source ("CS") to approach Shah about taking bass lessons from him. In the course of their lessons, almost all of which were recorded by the FBI, Shah repeatedly discussed jihad and his desire to prepare for it, and his training of Muslim brothers in deadly martial arts. Shah trained dozens of Muslims, including his co-defendants Rafiq Sabir and Mahmud Brent, in jujitsu and hand-to-hand combat, among other things. Shah also urged many of his students to prepare for violent jihad against the infidels. Shah indicated his desire to open a facility where he could train Muslims for combat in preparation for jihad.

At the direction of the FBI, the CS introduced Shah to an undercover agent ("UC"), who was posing as an *Al Qaeda* recruiter. As soon as the subject of providing assistance to a terrorist group was raised by the CS, Shah mentioned his close friend (and now co-defendant) Rafiq Sabir, telling the CS that his friend was a doctor who could provide medical services, and that together they could be offered as a package. Shah met multiple times with the UC in Plattsburgh, New York, and later in Orlando, Florida. On these occasions, the UC made clear that he was a recruiter looking for someone with Shah's martial arts skills to train jihadists for close combat at terrorist training camps overseas, and asked Shah whether he would be willing to do this. At all times, Shah eagerly agreed. Shah also agreed to make a demonstration video. On May 20, 2005, CS brought the UC to meet with Shah and Sabir. During that meeting, the UC, Shah and

3

Sabir again discussed jihad, training camps, and what Shah and Sabir could do to further the UC's cause. When the UC told Shah and Sabir that he was authorized to give *bayat* – the oath of allegiance to Usama Bin Laden – Shah and Sabir agreed to take part in that ceremony with the UC. On that day, Shah and Sabir then each swore themselves to *Al Qaeda* and Usama Bin Laden, committing themselves to the path of holy war.

**B.     Shah's Guilty Plea**

On April 4, 2007, Shah appeared before the Honorable Gabriel W. Gorenstein in Magistrate's Court to plead guilty to the Indictment. (4/4/07 Plea Transcript ("Tr.")). Shah affirmed that he would tell the truth and was asked a lengthy series of questions designed to determine whether he was competent to plead guilty and whether he understood and knowingly and voluntarily waived certain of his rights. The plea agreement between the parties was summarized, and Shah was asked specifically whether he understood and agreed with certain portions: namely, that he stipulated to a sentence of 180 months; and that he would not appeal any sentence at or below 180 months. (Tr. 10-12). Following a thorough colloquy, Judge Gorenstein asked Shah to describe his criminal conduct. Shah stated that he agreed with others to provide martial arts training to *Al Qaeda*, and that he knew that was wrong. (Tr. 13). Shah also agreed that he knew *Al Qaeda* was a terrorist organization so designated by the Secretary of State. (Tr. 15).

## DISCUSSION[2]

The Government submits that there are no valid bases for departure or variance from the sentence to which the parties stipulated in the plea agreement. Indeed, the stipulated sentence of 180 months is already a significantly lower sentence than is called for by the advisory Guidelines. Notably, under both the Probation Department's and the parties' calculations, Shah's Sentencing Guidelines range would be well in excess of 180 months: the Probation Department calculated Shah's Guidelines sentence as 360 months to life, while the parties agreed that Shah's Guidelines sentence was from 292 to 365 months' imprisonment. Accordingly, the stipulated sentence of 180 months is eminently fair given Shah's offense conduct and personal history, with consideration of the § 3553(a) factors, and the Court should impose a sentence of 180 months on Shah.

### A. Procedure for Determining Shah's Sentence

While the Guidelines no longer play a mandatory role at sentencing, they nevertheless continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 453 U.S. 220, 252 (2005). In furtherance of that goal, judges are required to "consider the Guidelines 'sentencing range established for . . . the applicable category of

---

[2] To date, the Government has not received a sentencing submission from Shah. If such a submission is received prior to sentencing, the Government may wish to supplement this memorandum to respond to any arguments Shah raises.

5

offense committed by the applicable category of defendant,' § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and Supp. 2004)." *Id.* at 260.

In sentencing defendants, district courts should consider the factors set forth in 18 U.S.C. § 3553(a). This provision provides that the sentencing "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant;
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effect manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];
(5) any pertinent policy statement [issued by the Sentencing Commission];
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

6

In *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005), the Second Circuit explained that district courts should now engage in a three-step sentencing procedure in light of *Booker*. First, the court must determine the applicable Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *United States* v. *Crosby*, 397 F.3d at 112. Second, the court should consider whether a departure from that Guidelines range is appropriate. *Crosby*, 397 F.3d at 112. Third, the court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)" and determine the sentence to impose. *Id.* at 113. A failure to consider the Guidelines range and to instead simply select a sentence without such consideration is error. *Id.* at 115.

**B.      Shah's Sentencing Range is 180 Months**

The Probation Office determined that Shah's sentencing range under the Guidelines is restricted to 180 months, due to the statutory maximum sentences applicable to the count of conviction. (PSR ¶ 129). Shah does not object to the Probation Office's Guidelines calculations, and, in fact, stipulated to the resulting 180-month sentence in the parties' plea agreement. As noted above, this sentence is significantly lower than the 292 to 365 months (under the plea agreement) or the 360 months to life imprisonment (found by the Probation Department) that Shah would have faced absent the statutory maximums in place for the crime to which Shah pled guilty. Moreover, Shah greatly benefitted by

7

his plea agreement with the Government, as this agreement permitted Shah to plead guilty to a single count of conspiracy to provide material support to terrorism. Had Shah been convicted of all three counts with which he was originally charged, he would have been exposed to a 45-year sentence by statute, leaving ample room for the Sentencing Guidelines range of 292 to 365 months agreed to by the parties.

**C.    Shah Is Not Entitled to Any Departures from the Guidelines**

The Probation Office notes no grounds that would warrant a departure from the prescribed sentencing guidelines. Shah has stipulated that no departures are appropriate, and has not sought a downward departure under the Sentencing Guidelines.

**D.    The Factors Set Forth in Section 3553(a) Warrant a Sentence of 180 Months**

The factors set forth in 18 U.S.C. § 3553(a) do not support variance from the 180-month stipulated sentence. Indeed, these factors further demonstrate that the appropriate sentence in this case is that to which the parties stipulated as reasonable and the Probation Office recommended – 180 months.

**    1.    The Nature and Circumstances of the Offense and Shah's History**

The nature and circumstances of the offense weigh overwhelmingly in favor of a 180-month sentence. Shah's criminal actions include offering himself as a martial arts trainer for *Al Qaeda* members preparing at their training camps for operations to kill Americans and those allied with America. During the course of his crime, Shah joined the *Al Qaeda* terrorist organization, swearing his loyalty to Usama Bin Laden, and also

8

attempted to set up a training facility in New York to encourage and prepare individuals for the jihad inside America. There can be no question that Shah's crime falls comfortably within the heartland of the terrorism-related activities that Congress has sought to punish severely and deter. Indeed, for *Al Qaeda*'s terrorist mission to succeed, it needs men who possess special skills like Shah's martial arts expertise, and who are willing to train others in those skills. Shah's conduct is therefore fully deserving of a 180-month sentence, which is well below the Guidelines range established by the Sentencing Commission for the type of conduct in which Shah engaged.

2. **The Need for the Sentence Imposed to:**

   a. **Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense**

As explained above, the seriousness of the offense is such that a sentence of 180 months is the only appropriate sentence in this case. The Probation Office concurs, recommending that Shah be sentenced to a prison term of 180 months. As far as just punishment is concerned, the United States Sentencing Commission dictated that the crimes to which Shah pled guilty should result in a sentence of at least 292 to 365 months, substantially in excess of that to which Shah is exposed. Accordingly, the appropriate sentence here is 180 months.

   b. **Afford Adequate Deterrence**

In the Government's view, a sentence of 180 months is necessary to ensure deterrence, particularly in a case like this one where the defendant has not demonstrated

9

any remorse for his crimes. Accordingly, there is no reason to sentence Shah to less than the stipulated sentence because of an assumption that he does not need to be deterred from future problematic conduct.

    **c.**  **Protect the Public from Further Crimes of the Defendant**

In the Government's view, a sentence below the stipulated sentence based on this factor would be inappropriate. There is no reason to believe that Shah, a sworn member of *Al Qaeda* who jumped at the chance to assist its mission in any possible way – whether it be to serve as an instructor at a terrorist training camp overseas, to set up a training facility in the United States, or to provide an introduction to *Al Qaeda* for his friend, Rafiq Sabir, so that Sabir could provide his own skills in medical services – has reformed such that a lesser sentence is warranted.

    **d.**  **Provide Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

This factor should be irrelevant to the Court's analysis.

**3.**  **The Kinds of Sentences Available**

This factor is not at issue because Shah is facing mandatory imprisonment.

**4.**  **The Kinds of Sentence and the Sentencing Range Established in the Sentencing Guidelines**

This factor weighs heavily in favor of a 180-month sentence. As explained above, Shah's Sentencing Guidelines range is 292 to 365 months, a sentence well above the stipulated sentence of 180 months. Accordingly, Shah already has received a tremendous

benefit from his plea agreement in this case by having his sentence capped at 180 months.

**5.      Pertinent Policy Statements Issued by the Sentencing Commission**

The policy statements issued by the Sentencing Commission present no basis to reduce Shah's stipulated sentence of 180 months.

**6.      The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

Typically, the individuals most similarly situated to a particular defendant tend to be his co-defendants, who are often charged with the same or similar conduct. Of Shah's three co-defendants in the original indictment, two have been sentenced. Mahmud Brent, like Shah, pleaded guilty to one count of material support with a stipulated sentence of 180 months. Brent was sentenced to 180 months. Abdulrahman Farhane, who was charged in the same indictment as Shah and ultimately pleaded guilty to money laundering and false statements charges, received a sentence of 13 years' imprisonment. Rafiq Sabir has yet to be sentenced, but, having been convicted at trial of two material support counts, faces a statutory maximum sentence of 30 years, with a Sentencing Guidelines range that the Probation Department has determined as 360 months to life imprisonment. Accordingly, a 180-month sentence is well in line with sentences received by Shah's co-defendants.

Moreover, a survey of some cases in which defendants were convicted of material

11

support crimes, reveals that most have received significant prison sentences.[3] *See, e.g.*, *United States* v. *Paracha*, 03 Cr. 1197 (SHS) (S.D.N.Y.) (material support conviction at trial resulted in 30-year sentence); *United States* v. *Abu Ali*, No. Crim.A. 05-53-GBL (E.D. Va.) (material support conviction at trial resulted in 30-year sentence); *United States* v. *Haouari*, S4 00 Cr. 15 (JFK) (S.D.N.Y.) (material support conviction at trial resulted in 24-year sentence); *United States* v. *Khan*, No. Crim. 03-296-A (E.D. Va.) (material support convictions at trial for various members of Virginia Jihad network resulted in sentences of 10 years for material support counts, in addition to sentences ranging from 55 years to life on other counts); *United States* v. *al-Moayad and Zayed*, (E.D.N.Y.) (material support and other convictions at trial resulted in sentences of 75 years and 45 years, respectively); *United States* v. *Lakhani*, (D.N.J.) (material support and other convictions at trial resulted in sentence of 47 years); *United States* v. *Gamarra-Murillo* (M.D. Fla.) (material support and weapons conviction on guilty plea resulted in 25-year sentence); *United States* v. *Faris* (E.D. Va.) (material support conviction on guilty plea resulted in 20-year sentence); *United States* v. *Battle* (D. Ore.) (material support charge but seditious conspiracy guilty plea resulted in sentence of 18 years).

This list does not account for every material support sentence in the United States, and there are certainly some defendants (including many who have signed cooperation

---

[3] This non-exhaustive list was compiled with the assistance of the Department of Justice's Counterterrorism Section, which coordinates and assists in federal terrorism prosecutions nationwide.

agreements with the Government) who have received lesser sentences. What this non-exhaustive sampling does convey, however, is that courts tend to treat such cases very seriously, imposing lengthy prison sentences on those defendants conspiring or attempting to provide, or providing material support to a terrorist organization – defendants who are similarly situated to Shah.

**7.     The Need to Provide Restitution to Any Victims of the Offense**

This factor is not at issue in this case.

## CONCLUSION

The factors set forth in Section 3553(a) overwhelmingly establish that Shah should receive a sentence of 180 months, the stipulated sentence in this case, which is well below the applicable Sentencing Guidelines range for his crimes.

For all of the foregoing reasons, the Court should sentence Shah to a term of 180 months' imprisonment.

Dated:      New York, New York
            November 4, 2007

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney


                                    ____/s/_____
                                    Jennifer G. Rodgers
                                    Karl Metzner
                                    Assistant United States Attorneys
                                    (212) 637-2513/2476

13